Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

ORIGINA

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | Morton Denlow |
|---|---|---|---|
| **CASE NUMBER** | 99 C 1740 | **DATE** | 10/17/2001 |
| **CASE TITLE** | Timothy White, et al. Vs. Kenneth Warren & Son, Ltd, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion to compel (British Law Issue) production [108-1] is granted in part and denied in part.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | OCT 18 2001 | |
| | Notified counsel by telephone. | | date docketed | 126 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | | | |
| DK | courtroom deputy's initials | 01 OCT 17 PM 6: 14 | 10/17/2001 date mailed notice DK mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |


DOCKETED
OCT 18 2001

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

TIMOTHY DOUGLAS WHITE and WILSON )
PETER COTTON, as Personal Representatives )
of the ESTATE OF GERALD SEGELMAN, )
)
Plaintiffs, ) No. 99 C 1740
)
v. ) Magistrate Judge Morton Denlow
)
KENNETH WARREN & SON, LTD., BEIN & )
FUSHI, INC. and HOWARD GOTTLIEB, )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

Defendants Kenneth Warren & Son, Ltd., and Bein & Fushi, Inc. (collectively "Defendants") move to compel Plaintiffs Timothy Douglass White and Wilson Peter Cotton, as personal representatives of the Estate of Gerald Segelman ("Estate" or "Plaintiff") to produce three categories of documents originating from litigation matters in England: 1) documents and materials prepared for or in connection with a Beddoe proceeding; 2) witness statements from an English lawsuit filed by Plaintiffs against Peter Biddulph ("Biddulph Litigation"); and 3) documents related to the Farnsworth claim filed against the Segelman Estate in England, proceedings in the English courts pertaining to the construction of Segelman's will, and the lawsuit filed by Plaintiffs against the Farnsworth estate (collectively "Other English Litigation"). This Court held oral arguments on September 13, 2001. For reasons set forth below, Defendants motion is granted in part and denied in part.

# I. BACKGROUND FACTS

Plaintiffs filed a nine-count complaint against Defendants alleging a conspiracy to defraud the Estate in connection with the sale of rare musical instruments such as violins and bows. Defendants served their first request for production of documents on May 5, 1999. Defendants filed a motion to compel discovery on July 19, 2000. Judge Andersen granted the motion on October 31, 2000 and ordered Plaintiffs to produce all requested documents. Furthermore, Judge Andersen directed Plaintiffs to specifically identify any privileged documents and state the privilege involved.

After receiving a privilege log from the Plaintiffs, Defendants filed a second motion to compel discovery on February 20, 2001 to enforce Judge Andersen's previous order. Plaintiffs responded with a memorandum identifying and explaining the privileges asserted. In response, Defendants filed another motion to enforce Judge Andersen's October 31, 2000 order which is currently before this Court. Although the motion is styled a "motion to enforce order," the parties acknowledge that no detailed briefing of these issues were presented to Judge Andersen, and Judge Andersen has referred these issues to this Court for decision. Oral arguments were held on September 13, 2001.

# II. MOTION TO COMPEL ANALYSIS

First, the Court will analyze the Beddoe proceeding to determine whether the documents created therein are discoverable. Second, the Court will examine whether the witness statements from the Biddulph litigation are discoverable. Third, the Court will

determine whether the documents stemming from the Other English Litigation are discoverable.

## A. BEDDOE PROCEEDING DOCUMENTS

Under English law, a trustee can sue only in his name and is personally liable for any costs incurred as a result of the lawsuit. However, the trustee can indemnify himself out of the trust for any expenses that are "properly incurred." Trustees can insure that their expenses are "properly incurred" by obtaining prior court approval for the actions. The appliction to the court for such direction and advice is called a "Beddoe application."

A Beddoe proceeding is an English Law matter between the trustees of an estate as plaintiffs, the court, and, in the context of a charitable trust, the Attorney General as defendant and representative of the public interest. Generally, Beddoe applications are heard in private and the material relied upon at the hearing and the hearing proceeding remain confidential. The trustees and Attorney General present relevant material to the court.

The court's role in this proceeding is to act on behalf of the best interests of the charity and give advice to the trustees as to whether they should proceed with the proposed action. These proceedings are held in private and the hearing and any orders entered are confidential and privileged under English Law as long as an express order is made. (William Henderson Aff. ¶¶ 8-17).

Defendants move to compel production of documents and information relating to *White and Cotton v. Attorney General* (HC 1997 S 1650), the Beddoe proceeding brought

by Plaintiffs in England. The court hearing a Beddoe application will frequently enter an order which expressly prohibits the publication of what took place before the court. Such orders were entered in Plaintiffs' Beddoe proceeding. (Henderson Aff. ¶ 22).

Before addressing the merits, it is important to clarify what Plaintiffs are refusing to produce and what Plaintiffs have produced. Plaintiffs have not withheld any documents that existed before the Estate came into being which deal with the instruments in question, nor are they withholding any documents which deal with the transactions between the Estate, the Defendants and Peter Biddulph. (Oral Arg. 9/13/01, Tr. 31). Therefore, the underlying factual materials are all available to Defendants. The documents which are being withheld are those prepared for the Beddoe proceeding which gave rise to this action against Defendants and proceedings in court by which trustee indemnification was obtained.

### 1. International Comity

Comity, in the international sense, is defined as courtesy demonstrated between nations involving the mutual recognition of legislative, executive, and judicial acts. BLACK'S LAW DICTIONARY 267 (6th Ed. 1999). Since explicit English laws relate to the confidentiality of a Beddoe proceeding, this Court must analyze these issues with respect to international comity.

A Beddoe proceeding is privileged under English law. This Court in *McCook Metals L.L.C. v. Alcoa, Inc.*, 192 F.R.D. 242, 256 (N.D. Ill. 2000), stated that if a privilege is recognized in a foreign country, then comity requires us to apply that country's law to the

4

documents at issue. Although *McCook* was decided within a patent law context, it held communications between attorneys and foreign patent agents were privileged to the extent the foreign country recognized those communications as privileged. *Id.* at 252. The *McCook* holding applies to the case at bar because the trustees obtained an order to preserve the confidentiality of the Beddoe proceeding. Henderson Aff. ¶ 22. Therefore, the Beddoe proceeding, *White and Cotton v. Attorney General*, (HC 1997 S 1650), must be deemed privileged. However, any documents pertaining to the underlying facts in existence prior to the Beddoe proceeding are discoverable. *Jumper v. Yellow Corp.*, 176 F.R.D. 282, 287 (N.D. Ill. 1997).

### 2. United States' Recognized Privileges

Although international comity is a sufficient basis under which to protect a Beddoe proceeding from discovery, this Court will also examine American privileges to determine their applicability in this situation. The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law. *Upjohn v. United States*, 449 U.S. 383, 389, 101 S. Ct. 677, 682 (1981). The essential factors necessary to claim the attorney-client privilege are well settled in the Seventh Circuit as follows:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir.1997)

5

Applying the Seventh Circuit factors discussed above, the trustees of the Estate sought legal advice from the Beddoe Judge in his capacity as a legal advisor and the communications were related to the advice sought and were made in confidence by the client without any waiver of protection. By analogy, the trustees act as a client of the Beddoe Court, whereby the court is acting as a legal advisor. The Attorney General, who is not an agent of either the estate trustees or the Judge, also participates in a Beddoe proceeding as counsel or legal advisor for the public interest. Therefore, the Attorney General's presence at this proceeding would not negate the privilege because he is also acting to assist the court and the trustees and is not representing an adverse interest.

The work product doctrine is distinct from, and broader than the attorney-client privilege. *Smithkline Beecham Corp. v. Apotex Corp.*, 193 F.R.D. 530, 539 (N.D.Ill. 2000). The work product doctrine developed to protect the work of an attorney from encroachment by opposing counsel. *Smithkline*, 193 F.R.D. at 539. It consists of a multi-level protection whereby that information most closely related to an attorney's litigation strategy is absolutely immune from discovery, while that information with a more tenuous relationship to litigation strategy might be available in circumstances evincing a substantial need or undue hardship on the part of the discovery proponent. *Smithkline*, 193 F.R.D. at 539. Accordingly, information that is merely factual may not be withheld under the umbrella of work product but must be available, if not through the production of otherwise protectable documents, then through interrogatories or depositions. *Id.*

6

The work product privilege has been codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure:

> [A] party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative...only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of the materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

The Beddoe proceeding can be analogized to attorney work product. A Judge in a Beddoe proceeding acts as a legal advisor to the estate who gives an opinion as to whether the trustees should pursue litigation on behalf of the estate. Therefore, any conclusions, opinions, or legal theories the Estate shares with the Judge would clearly be considered work product and thus protected from discovery. It is also important to note that the work product doctrine does not protect discovery of underlying factual information which gives rise to the pending litigation. *Jumper*, 176 F.R.D. at 287. Therefore, this Court denies Defendants' motion to require Plaintiffs to produce documents prepared for or in connection with the Beddoe proceeding.

## B. BIDDULPH WITNESS STATEMENTS

The second category of documents sought by Defendants are documents generated in the English lawsuit filed by the Plaintiffs against Peter Biddulph, CH 1997 W No. 1651

("Biddulph lawsuit"). With respect to this lawsuit, the Court in England has authorized the Plaintiffs to use "all material disclosed pursuant to the two Orders made herein on 20th March 1997 by Mr. Justice Jacob (as subsequently varied) and all other material supplied to the Plaintiffs by the Defendant or his solicitors in correspondence prior to the date of this Order ..." (Pl. Ex. A, May 22, 1998 order).

Once again it is important to explain what has been produced and what is currently being withheld. Plaintiffs represent that they have produced all documents released by the May 22, 1998 order and all witness statements to which the witness has provided a consent for production. (Oral Arg. 9/13/01 Tr. 34-36).

In analyzing whether the witness statements in the Biddulph lawsuit are discoverable, the Court must look at the English law restrictions and international comity concerns. Defendants are requesting the Plaintiffs to produce a variety of witness statements from the Biddulph lawsuit. Plaintiffs contend that English Law prevents them from producing such documents. A number of witness statements for which no consent has been obtained are being withheld on the grounds that to disclose them would violate both civil and criminal statutes in England.

### 1. *English Law*

The applicable foreign law is English Civil Procedure Rule 32.12 which states:

> Except as provided by this rule, a witness statement may be used only for purpose of the proceedings in which it is served.
> Paragraph (1) does not apply if and to the extent that—

8

> the witness gives consent in writing to some other use of it;
> the court gives permission for some other use; or
> the witness statement has been put in evidence at
> a hearing held in public.

CPR 32.12.

Two of the mentioned exceptions are at issue here. The first exception is witness consent. Plaintiffs have proceeded in good faith to obtain consent from some witnesses in the Biddulph lawsuit and have produced those statements to Defendants. However, there are a number of statements for which consents have not been received and those have not been produced.

This brings the Court to the second exception, court permission. On May 22, 1998 English High Court of Justice issued an order allowing the Plaintiffs to use English litigation documents from the Biddulph suit for a variety of purposes, including initiating the instant litigation. *High Ct. of Justice, Chancery Div.*, CH 1997 W No. 1651. However, according to the Plaintiffs, that Order did not include the release of witness statements in the Biddulph suit. (9/13/01 Tr. 35). Consequently, there is an express prohibition on the use of witness statements for purposes other than the proceedings in which they served unless one of the three specified exceptions applies. On the other hand, if witness statements were produced pursuant to the High Court's Order, they must be produced to Defendants.

### 2. International Comity

International comity concerns usually arise when American and international law conflict. Plaintiffs argue that if they were to produce the statements that Defendants are

seeking, they would violate English law and would be subject to criminal penalties and professional ruin (Fawls Aff. ¶ 12-13). However, "the fact that foreign law may subject a person to criminal sanctions in the foreign country if he produces certain information does not automatically bar a domestic court from compelling production." *United States v. First National Bank of Chicago*, 699 F.2d 341, 345 (7th Cir. 1983).

The Seventh Circuit has discussed issues similar to the one at hand. In *Reinsurance Co. of America, Inc. v. Administratia Asigurarilor de Stat*, 902 F.2d 1275 (7th Cir. 1990), a defendant refused to answer post-judgment interrogatories because the answers would have violated Romanian law and subjected them to criminal sanctions in Romania. The Court used a balancing test which relied upon Section 442 of the Third Restatement of the Foreign Relations Law of the United States which states:

> (1)(a) A court or agency in the United States, when authorized by statute or rule of court, may order a person subject to its jurisdiction to produce documents, objects, or other information relevant to an action or investigation, even if the information or the person in possession of the information is outside the United States.
> (b) Failure to comply with an order to produce information may subject a person to whom the order is directed to sanctions, including finding of contempt, dismissal of a claim of defense, or default judgment, or may lead to a determination that the facts to which the order was addressed are as asserted by the opposing party.
> (c) In deciding whether to issue an order directing production of information located abroad, and in framing such an order, a court or agency of the United States should take into account the importance to the investigation or litigation of the documents or other information requested; the degree of specificity of the request; whether the information originated the United States; the availability of alternative means of securing the information; and the extent to which noncompliance with the request would undermine important interests of the state where the information is located.

> (2) If disclosure of information located outside the United States is prohibited by law, regulation, or order of a court or other authority of the state in which the information is located,...
> (a) a court or agency of the United States may require the person to whom the order is directed to make a good faith effort to secure permission from the foreign authorities to make the information available.

Applying these factors to the case at hand, the first factor is satisfied because the witness statements may be relevant to the pending litigation. Where evidence sought is, "directly relevant," to issues in litigation, this factor weighs in favor of production. *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468 (9th Cir. 1992).

The second factor goes toward specificity of the documents which the Defendants have adequately specified. The third factor goes toward the origination of the documents, whereby, there is no question that they originated in England and those who would be subjected to the penalties are in England and this would weigh toward non-disclosure. *Reinsurance*, 902 F.2d at 1281. The fourth factor is related to the alternative means which courts have interpreted as "substantially equivalent means." *Richmark*, 959 F.2d at 1475. The Defendants have not demonstrated that they have attempted to contact the witnesses nor have they sought to petition the court in England for release of the witness statements.

Finally, the fifth factor essentially attempts to balance the nations' interests. When confronted with this task, *Reinsurance*, 902 F.2d at 1280 appropriately noted the courts lack of expertise in evaluating a foreign nations economic and social policy and the, "ridiculous assignment of determining which competing national interest is more vital." The court did note that compelling interests in similar cases have included, national security, tax and patent

laws, and antitrust laws. The court determined the U.S. interest involved was protecting the finality of judgments, which would not rise to a compelling interest similar to the other cases and would not outweigh Romania's state secrets. *Id.* Of importance to their analysis were the strict penalties involved and the fact that their law appeared to be directed toward domestic affairs rather than protecting Romanian companies from foreign discovery requests. *Id.*

Comparing *Reinsurance* to the case at bar, a similar American interest is involved and the English interests in confidentiality seem quite compelling considering the penalties involved and to the extent their law appears aimed toward domestic affairs. Using the *Reinsurance* logic, the final factor in this case would lean toward non-disclosure and ultimately under the international comity analysis would also favor non-disclosure of those statements. However, 2(a) of the Third Restatement quoted above also discusses the possibility of the Court to order the Plaintiffs to make a good faith effort in obtaining documents located abroad. Plaintiffs have been making a good faith effort to obtain witness statements by seeking witness consent. Therefore, this Court denies Defendants' request that Plaintiffs produce any additional Biddulph witness statements for which consents have not been obtained.

## C. OTHER ENGLISH LITIGATION DOCUMENTS

Defendants are also requesting pleadings and other documents from the Other English Litigation. In America, such documents are routinely available to the public. To the extent pleadings and documents from the Other English Litigation are available to the public and are currently in the possession or control of the Plaintiffs, they are obligated to produce them for copying to Defendants. If permission from an English court is necessary to disclose these documents, Plaintiffs will not be required to seek such relief from the English court. The burden is upon Defendants to intervene to explain to the English court why disclosure is necessary. In that way, Plaintiffs cannot be faulted if the request is denied.

## III. CONCLUSION

If this Court expects courts in foreign jurisdictions to honor its orders and laws, this Court must pay due deference and respect to the laws and traditions of our English colleagues. In regards to the Beddoe proceedings, this Court deems those documents non-discoverable. In regards to the witness statements from the Biddulph Litigation, this Court will not order them to be produced unless witness consent has been obtained or the statements have already been released pursuant to the English High Court's Order. Plaintiffs should continue their good faith efforts to obtain witness consent. Lastly, with respect to the Other English litigation documents, to the extent they are publicly available, Plaintiffs must

produce them for copying to the extent copies are in Plaintiffs' possession and control. Otherwise, Defendants are free to seek relief from the English courts. Therefore, **Defendant's motion to compel is hereby granted in part and denied in part.**

**SO ORDERED THIS 17TH DAY OF OCTOBER 2001.**

_____
**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**

**Copies mailed to the following:**

Peter C. John
WILLIAMS MONTGOMERY & JOHN
20 North Wacker Drive
Suite 2100
Chicago, IL 60606
*Attorneys for Plaintiff*

David J. Levtin
LETVIN & STEIN
541 North Fairbanks Court
Suite 2121
Chicago, IL 60611
*Attorneys for Bein & Fushi, Inc.*

Joseph J. Schiavone
BUDD LARNER GROSS, ROSENBAUM,
  GREENBERG & SADE
150 John F. Kennedy Parkway
Short Hills, NJ 07078
*Attorneys for Plaintiff*

Robert I. Berger
Gregory E. Ostfeld
ALTHEIMER & GRAY
10 South Wacker Drive
Suite 4000
Chicago, IL 60606
*Attorneys for Howard Gottlieb*

Jack J. Carriglio
Eric E. Newman
MECKLER BULGER & TILSON
8200 Sears Tower
233 South Wacker Drive
Chicago, IL 60606
*Attorneys for Kenneth Warren & Sons, Ltd.*